## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

APR 0 1 2022

PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| CANDELARIO SANCHEZ, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | 3:13-CV-291 |
| | : | (JUDGE MARIANI) |
| WARDEN KENNETH R. | : | (Magistrate Judge Carlson) |
| CAMERON, et al. | : | |
| | : | |
| Respondents. | : | |

### MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Magistrate Judge Carlson's Report and Recommendation ("R&R") (Doc. 28) to the Petitioner Candelario Sanchez's Petition for Writ of Habeas Corpus (Doc. 1) pursuant to 28 U.S.C. § 2254. Sanchez seeks to be released from the custody of the Pennsylvania Department of Corrections or obtain a new trial based on claims that both his appellate and trial counsel rendered ineffective assistance. Magistrate Judge Carlson recommends that his Petition be denied because "Sanchez's claims are either unexhausted and procedurally defaulted or lack merit." (Doc. 28 at 1). Sanchez objected to this recommendation, arguing that he "is entitled to relief as a matter of law and has properly exhausted all relevant claims involving constitutional violations." (Doc. 31 at 1). Upon review of the R&R (Doc. 28), Sanchez's objections thereto (Doc. 31), and all relevant documents, the Court concludes that Sanchez is not entitled to relief under § 2254 and the Court will adopt Magistrate Judge Carlson's § 2254.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A jury convicted Sanchez of two counts of intent to distribute controlled substances, criminal conspiracy to distribute controlled substances, and possession of a firearm by a felon. (Doc. 23-1 at 318). The trial court sentenced Sanchez to an aggregate sentence of 25 to 50 years imprisonment on August 21, 2006, which was affirmed by the Superior Court on March 24, 2009. (*Id.* at 315-318). The Pennsylvania Supreme Court denied his Petition for Allowance of Appeal on October 28, 2009. *See Commonwealth v. Sanchez*, 982 A.2d 1228 (Pa. 2009). Sanchez's subsequent petition for writ of certiorari was denied by the United States Supreme Court on March 22, 2010, rendering his conviction and sentence final. *Sanchez v. Pennsylvania*, 559 U.S. 1010 (2010).

Judge Carlson summarized Sanchez's "somewhat complex" procedural history of the case as follows:

> Following his direct appeal, Sanchez filed his first petition for post-conviction relief on March 15, 2011, raising six claims of ineffective assistance of his trial counsel. (Doc. 23-1 at 334). In this petition, Sanchez alleged that his trial counsel (1) failed to effectively cross examine several Commonwealth witnesses regarding the evidence found in the petitioner's residence; (2) failed to challenge the legality of the search warrant obtained for the petitioner's residence; (3) failed to obtain an expert to testify regarding drug packaging; (4) failed to adequately cross examine the petitioner's co-defendant; (5) advised him not to testify on his own behalf; and (6) failed to object to hearsay testimony of the lab supervisor who oversaw the lab where the controlled substances were tested. (*Id.* at 334-35). After a thorough analysis of the merits of Sanchez's claims, the PCRA court denied the petition on January 13, 2012. 9*id.* at 354). On March 14, 2013, the Superior Court affirmed the denial of Sanchez's PCRA petition (*Id.* at 504) and Sanchez's subsequent Petition for Allowance of Appeal was denied by the Pennsylvania Supreme Court on October 3, 2013. *Commonwealth v. Sanchez*, 76 A.3d 539 (Pa. 2013).

2

During this appeals process, Sanchez filed another PCRA petition on February 1, 2013, alleging that his direct appeal counsel was ineffective for failing to obtain a correction of a misstatement by the trial court in its 1925(a) opinion that drugs were found in the petitioner's home. (*Id.* at 497). Before the PCRA court could address the petition, direct appeal counsel filed an appeal to the Supreme Court, which was ultimately denied. (*Id.* at 714). Subsequently, the PCRA court appointed counsel for Sanchez, and a hearing was scheduled for February 27, 2014. (*Id.*).

Sanchez's petition was denied by the PCRA court on April 24, 2014 (*Id.*).  On May 30, 2014, Sanchez filed a *pro se* notice of appeal three days later. (*Id.*). On July 18, 2014, the Superior Court entered an order directing Sanchez to show cause why his appeal should not be dismissed, as the PCRA court did not grant him leave to appeal *nunc pro tunc*. (*Id.* at 544). After Sanchez failed to respond, the Superior Court quashed his appeal on August 11, 2014. 9*Id.* at 544-45).

On July 13, 2015, Sanchez filed yet another PCRA petition, requesting reinstatement of his appeal rights with respect to the denial of his PCRA petition in April 2014. (*Id.* at 527).  His appeal rights were reinstated after a hearing and Sanchez filed a notice of appeal on November 20, 2015, raising a sufficiency of the evidence claim. (*Id.* at 547).  The Superior Court affirmed the denial, but on the basis that the petition that was filed on February 1, 2013, was facially untimely and should not have been considered on its merits by the PCRA court. (*Id.* at 718).  In its decision, the court noted that Sanchez had abandoned his claim of ineffective assistance of direct appeal counsel, and that the sufficiency of the evidence claim had already been litigated and upheld on direct appeal. (*Id.*).

Sanchez first filed the instant habeas petition on February 6, 2013, raising the same claims of ineffective assistance of counsel as his initial PCRA petition, as well as a claim regarding the ineffectiveness of his direct appeal counsel. (Doc. 1).  The petition was stayed pending the outcome of Sanchez's ongoing state appeals (Doc. 7).  After Sanchez's state appeals were decided, the case was reopened in April 2017, and the respondents filed their response to the petition on September 14, 2017.  (Doc. 23).

(Doc. 28 at 4-7 (footnotes omitted)). This matter was referred to Magistrate Judge Carlson on January 10, 2019 and he issued his R&R on April 16, 2019. (*See id.*).

### III. STANDARD OF REVIEW

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 503 U.S. at 68.

### a. Review of a Report and Recommendation

When objections to the magistrate judge's Report and Recommendation are filed, the court must conduct a de novo review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). This only applies, however, to the extent that a party's objections are both timely and specific; if objections are merely "general in nature," the court "need not conduct a de novo determination." *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Indeed, the Third Circuit has instructed that "providing a complete de novo determination where only a general objection to the report is offered

would undermine the efficiency the magistrate system was meant to contribute to the judicial process." *Id.* at 7.  In conducted a de novo review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F.Supp. 736, 738 (M.D.Pa. 1993). Uncontested portions of the Report and Recommendation may be reviewed at a standard determined by the district court.  *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7.  At the very least, the court should review uncontested portions for clear error or manifest injustice.  *See, e.g., Cruz v. Chater*, 990 F.Supp 375, 376-77 (M.D.Pa. 1998).

### b. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).[1]  Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a matter that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts).  While the petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278 (1971), he must "give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here.  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275).

### c. Merits Standard

Once a court has determined that the exhaustion requirement has been met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

---

[1] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).  Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

(1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [the decision] was based on an unreliable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome. *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this assumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner

"must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F.Supp.2d 278, 296 (E.D.Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step in the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F.Supp.2d 354, 364 (M.D.Pa. 2004) (citing 28 US.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F.Supp.2d at 296; *see also Williams v. Taylor*, 529 U.S.C. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F.Supp.2d at 296; *see also Williams* 529 U.S. at 408-09.

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

### d. Ineffective Assistance of Counsel

The test for ineffective assistance of counsel is a well-settled and firmly established one containing two components. "First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decisions involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (1987), is not contrary to *Strickland*. *See Jacobs*, 395 F.3d at 107 n.9.

There is a "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123

(2009). "The question 'is not whether a federal court believes the state court's determination' under *Strickland* 'was incorrect but whether [it] was unreasonable – a substantially higher threshold." *Id.* (citing *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007)). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## IV. ANALYSIS

Sanchez argues that his habeas petition should be granted on grounds that "has shown that the state conviction was manifestly contrary to, and an unreasonable application of clear established federal law." (Doc. 31 at 8). Sanchez asserts four detailed objections to the R&R, but also states that he objects to "all findings as stated by the Magistrate Judge." (*Id.* at 1). As such, the Court will review each conclusion reached by Magistrate Judge Carlson.

### a. Ineffective Assistance of Appellate Counsel

Sanchez makes a passing reference that he "properly exhausted all relevant claims involving constitutional violations," which the Court construes as an objection to the R&R. (Doc. 28 at 1). Sanchez asserted an ineffective assistance of counsel claim against his direct appeal counsel. (Doc. 1 at 20; Doc. 28 at 21). Magistrate Judge Carlson summarized the state courts' findings on this claim as follows:

> Sanchez initially brought this claim in his February 2013 PCRA petition. The PCRA petition was denied on its merits on April 24, 2014. Sanchez appealed,

10

but his appeal was quashed by the Superior Court, as the PCRA court had not granted Sanchez the right to appeal *nunc pro tunc*. ([Doc. 23-1] at 544-45). After filing a third PCRA petition, Sanchez's appellate rights were reinstated, and he filed an appeal of the denial in his February 2013 PCRA petition, raising only a sufficiency of the evidence claim. (*Id.* at 547). The appeal was ultimately denied by the Superior Court on October 6, 2016. (*Id.* at 709).

In its decision denying Sanchez's appeal, the Superior Court determined that Sanchez's PCRA petition filed in February 2013 was untimely on its face, as it was filed almost three years after his conviction became final. (*Id.* at 719). Moreover, the court noted that the PCRA court should have dismissed the petition for lack of jurisdiction, as Sanchez's appeal from his previous PCRA petition was pending at the time of the court's decision. *Id.* at 718).

Most significantly, the Court recognized that Sanchez had abandoned his claim of ineffective assistance of his appellate counsel. On this score, the court stated:

> Moreover, to the extent Appellant's February 1, 2013 petition was based on PCRA counsel's ineffectiveness, Appellant abandoned that claim in this appeal. Instead, Appellant's brief addressed only the sufficiency of the evidence to support his conviction. We observe that Appellant's sufficiency challenge was previously litigated on direct appeal. *See Commonwealth v. Sanchez*, 972 A.2d 561 (Pa. Super. 2009), *appeal denied*, 603 Pa. 685, 982 A.2d 1228 (2009) (affirming Appellant's conviction based on Appellant's access to large drug stash housed at 626 Chestnut Street). The appellate decision made clear this Court did not rely on the errant fact contained in its summary of facts. Put simply, the PCRA court erred when it addressed the actual merits of Appellant's sufficiency issue.

(Doc. 23-1, at 719, n.2). Thus, not only did the court note that Sanchez had abandoned this claim on appeal, but also that the claim was without merit, as the court did not rely on the alleged errant fact when it denied Sanchez's direct appeal.

(Doc. 28 at 21-22).  Judge Carlson concluded that "[b]ecause Sanchez's PCRA petition was untimely, and because he abandoned his claim on appeal of the denial of his PCRA petition, this claim is unexhausted."  (*Id.* at 22).  Additionally, Judge Carlson determined that this claim is procedurally defaulted because he cannot bring this claim in state court.  (*Id.* at 23).  Finally, Judge Carlson also concluded that, even if this claim was properly exhausted and not procedurally defaulted, "this ineffectiveness claim fails on its merits because Sanchez cannot show any prejudice resulting from counsel's error."  (*Id.*; *see also* Doc. 23-1 at 719, n.2 ("The appellate decision made clear this Court did not rely on the errant fact contained in its summary of facts.")).

Because Sanchez abandoned his ineffective assistance of appellate counsel claim, he did not give the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" *O'Sullivan*, 526 U.S. at 845, and this claim is unexhausted.  Furthermore, the Court agrees with the PCRA court's conclusion that even if this claim was properly exhausted, "no prejudice could have resulted from this error" because "no reliance was placed upon this errant fact by the state appellate court."  (*See* Doc. 28 at 23).

Sanchez fails to cite to the record or to caselaw to demonstrate that his ineffective assistance of counsel claim is either properly exhausted or has merit and instead, states a generalized objection to the R&R.  The Court agrees with the analysis contained within the

R&R and finds no clear error or manifest injustice.  As such, Sanchez's general objection to the R&R on his ineffective assistance of appellate counsel claim will be overruled.

### b. Ineffective Assistance of Trial Counsel

Sanchez asserts a variety of ineffective assistance of trial counsel claims in his petition.  (*See generally* Doc. 1).  The R&R found that "after a review of the petition and the state court record, we agree with the state courts that these claims are without merit and thus, they do not warrant habeas relief."  (Doc. 28 at 24).  Sanchez asserts objections to the denial of these claims, and the Court will discuss each in turn.

Sanchez first objects to the R&R's finding that Sanchez is not entitled to relief on his claim asserting ineffective assistance of his trial counsel due to counsel's alleged failure to "effectively cross-examine several Commonwealth witnesses regarding evidence at Petitioner's residence" lacked merit.  (Doc. 28 at 24-25; Doc. 31 at 3-4).  The Court construes this as an objection to two of Sanchez's ineffective assistance of counsel claims – his claim that counsel was ineffective for failing to adequately cross-examine the Commonwealth's expert and his claim that counsel was ineffective for failing to adequately cross-examine Sanchez's co-defendant.  According to Sanchez, the PCRA court "ruled contrary to [Supreme Court caselaw] and applied an unreasonable application of above mentioned precedent."  (Doc. 31 at 4).

The PCRA court determined that Sanchez's counsel's cross-examination of Commonwealth witnesses was a "reasonable line of questioning" based on counsel's theory

of the case, which was that Sanchez was not involved in the drug operation.  (Doc. 23-1 at

360-61; *see also* Doc. 28 at 24); *see also Marinelli v. Beard*, 2012 WL 5928367, at *55

(M.D.Pa. Nov. 26, 2012) ("The testimony of Dr. Mihalakis about the trajectory of the bullets

and the gunshot residue on Dumchock was not inconsistent with the trial strategy of Rosini,

either during the guilt phase or the penalty phase.  Thus, Rosini had a reasonable strategic

basis for not cross-examining Dr. Mihalakis on these issues.").  As explained by Judge

Carlson, "[c]ounsel questioned the expert about the items found in Sanchez's residence,

which were everyday household items that the Commonwealth theorized were 'drug

packaging materials.'"  (Doc. 28 at 25; *see also* Doc. 23-1 at 361).  The PCRA court

determined that this questioning was reasonable, and this finding was affirmed by the

Superior Court.  (Doc. 28 at 25; Doc. 23-1 at 361-62).

Also, Judge Carlson explained that the PCRA court found "the testimony of

Sanchez's co-defendant, Ramos Rodriguez, actually helped Sanchez's case, as Ramos-

Rodriguez testified that Sanchez was not involved in the drug operation" and even "took full

responsibility for the drug deliveries and attempted to clear Sanchez."  (Doc. 28 at 26; Doc.

23-1 at 363).  The PCRA court found, and Judge Carlson agreed, that "it was reasonable for

trial counsel not to attempt to elicit any more testimony from Ramos-Rodriguez, as it might

risk losing the advantage his testimony had already given to Sanchez."  (Doc. 28 at 26; Doc.

23-1 at 363).

14

With both of Sanchez's ineffective assistance of counsel claims relating to his failure to cross-examine Commonwealth witnesses, including the Commonwealth's expert and Sanchez's co-defendant, it is clear that the state courts reasonably determined that Sanchez's counsel's line of questioning for these witnesses was reasonable in light of the facts of the case, counsel's theory of the case, and the testimony actually elicited from the witnesses. The PCRA court's holding was not "contrary to" *Strickland* and its progeny, nor was *Strickland* unreasonably applied to Sanchez's ineffective assistance claim. As neatly summarized by Judge Carlson,

> given the defense theory of the case that Sanchez had no involvement in any of the alleged drug trafficking which was acknowledged by Ramos-Rodriguez, an extended exegesis attacking drug test results would likely have been both fruitless and a distraction from what was otherwise a coherent defense theory that was well grounded in the evidence. Counsel cannot be faulted for pursuing this single strongest line of defense to the exclusion of other less effective defense strategy.

(Doc. 28 at 28-29). Accordingly, the Court will overrule Sanchez's objection.

Sanchez next objects to the R&R's recommendation that Sanchez's ineffective assistance of counsel claim for counsel's failure to challenge the search warrant for Sanchez's residence is without merit. (Doc. 31 at 4-5). According to Sanchez, "[t]rial counsel failed to request a hearing to challenge any and all matters that may be inconsistent or false concerning the search warrant obtained," which "resulted in violating Petitioner's constitutional right to effective representation." (*Id.* at 5). As an initial matter, Sanchez's objection fails to identify any specific problems, inconsistencies, or falsities contained in the

search warrant to which he objects and instead, he bases his objection on a vague and

speculative argument regarding matters that "*may* be inconsistent or false." (*Id.* (emphasis

added)).

Judge Carlson stated the PCRA court's findings as follows:

> The PCRA court concluded that counsel was not ineffective. Counsel testified
> that he did not challenge the warrant because no drugs had been found at
> Sanchez's residence, which supported counsel's theory of the case that
> Sanchez was not involved in the operation. (Doc. 23-1 at 362). Further, he
> stated that he did not recall any issues with the search warrant that he could
> have challenged. (*Id.*). Based on counsel's testimony, and on the fact that the
> court's review of the record revealed no deficiencies in the warrant, the court
> found that counsel "[could] not be ineffective for failing to file a motion that lacks
> merit.

(Doc. 28 at 25-26).

Upon review of the record, the Court finds the PCRA's findings, the Superior Court's

affirmation, and Judge Carlson's recommendation on Sanchez's ineffective assistance claim

relating to the search warrant are entirely reasonable in terms of both the fact and law. As

such, the Court will overrule Sanchez's objection.

With his next objection, Sanchez argues that his ineffective assistance of counsel

claim for trial counsel's failure "to request or obtain an expert to testify at trial concerning an

unknown substance found at Petitioner's residence" has merit. (Doc. 31 at 5). Judge

Carlson summarized the conclusions of the PCRA court, stating:

> Trial counsel testified at the hearing that his theory of the case was that the
> petitioner was not involved in the drug operation at all. (Doc. 23-1 at 360). In
> fact, the petitioner's co-defendant testified that Sanchez had no knowledge of
> the business, and there were no drugs found at Sanchez's residence. (*Id.*).

16

Thus, the [PCRA] court concluded that trial counsel had no reason to hire an expert, as it would not have added to the theory that the petitioner was not involved in the drug operation.

(Doc. 28 at 24).  The Superior Court affirmed this conclusion.  (Doc. 23-1 at 507 n.6).

Upon review of the trial record, state court decisions, and Judge Carlson's R&R, it is plain that the PCRA court's decision and the Superior Court's affirmation are not contrary to, or an unreasonable application of, constitutional law, nor do they contain unreasonable determinations of the facts in light of the evidence presented.  Accordingly, Sanchez is not entitled to habeas relief on this claim and his objection will be overruled.

Sanchez's next objection is to Judge Carlson's recommendation that Sanchez is not entitled to habeas relief on his claim that his trial counsel was ineffective for advising him not to testify at trial.  (Doc. 31 at 6-8).  According to Sanchez, "[t]rial counsel was determined to not allow Petitioner to testify at his trial" and the "PCRA court agreed that Petitioner should not exercise this constitutional right to testify."  (*Id.* at 6-7).

The PCRA court explained:

At the PCRA hearing both Defendant and his counsel testified.  Defendant testified that he told Attorney Barnes he wanted to testify.  Attorney Barnes testified that Defendant never suggested to him that he wanted to testify. We resolve issues of credibility in favor of Attorney Barnes.

Additionally, Attorney Barnes testified at the hearing that Defendant was on federal parole and used numerous aliases.  Attorney Barnes did not want this information to come out if Defendant were to take the stand.  Attorney Barnes also testified that Defendant would not have been a good witness

Because Defendant testified at the PCRA hearing, we had the opportunity to listen and see him testify and we agree with Attorney Barnes that Defendant

17

would not have been a good witness.  He was difficult to understand, even
through an interpreter, and there were some inconsistencies in his testimony.
In short, he was not a witness who would have materially advanced the cause
of his case.  We conclude that trial counsel's decision not to call Defendant or
encourage him to testify was reasonable.

(Doc. 23-1 at 364; *see also* Doc. 28 at 26).

Sanchez argues that "[i]f it was hard to understand Petitioner due to not being able to

properly speak the English language, then by statute . . ., an interpreter could have been

requested." (Doc. 31 at 8).  However, as included in the above excerpt of the PCRA court's

decision, the court did not say it was difficult to understand Sanchez because of a language

barrier; rather, the court explained that it was difficult to understand him at the PCRA

hearing "*even through an interpreter*" and his testimony contained inconsistencies.  (Doc.

23-1 at 364 (emphasis added)).  It was based on these observations, and the testimony of

Sanchez's counsel, that led the court to conclude that his counsel's decision to not call

Sanchez as a witness or encourage him to testify was reasonable.

Having reviewed the record, the Court does not find that the state court's findings

were contrary to clearly established constitutional law, nor were the findings an

unreasonable application of the facts in light of the evidence presented.  The crux of

Sanchez's objection appears to be a disagreement with the PCRA court's (and the R&R's)

conclusions regarding his credibility and whether he would have been a "witness who would

have materially advanced the cause of his case." (*See* Doc. 23-1 at 364).  As mentioned

above, mere disagreement with an inferential leap or credibility judgment of the state court

is insufficient to permit relief. *Porter*, 276 F.Supp.2d at 296; *see also Williams v. Taylor*, 529 U.S.C. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Accordingly, Sanchez is not entitled to habeas relief on this claim and his objection will be overruled.

Finally, the Court construes Sanchez's general statement that he objects to "all findings as states by Magistrate Judge" as an objection to Judge Carlson's recommendation that Sanchez is not entitled to habeas relief on his claim that his trial counsel was ineffective for not objecting to the hearsay testimony of the Pennsylvania State Police lab supervisor. As explained by Judge Carlson,

> The PCRA court noted that, at the time of trial, the governing caselaw in Pennsylvania was *Commonwealth v. Carter*, 861 A.2d 957 (Pa. Super. Ct. 2004), which held that a defendant's rights under the Confrontation Clause were violated when a lab report was admitted through a crime lab manager rather than the forensic scientist who prepared the report. ([Doc. 23-1] at 365). Additionally, counsel testified that he was not aware of the *Carter* rule. (*Id.*). However, even though the court recognized this standard that was the governing law at the time of trial, the court found that counsel's performance, *i.e.*, failing to object to the testimony as hearsay, did not so undermine the truth-determining process as to constitute ineffective assistance of counsel. (*Id.* at 367).

> On appeal, the Superior Court affirmed, but on the basis of a harmless error analysis, as the Pennsylvania Supreme Court overruled *Carter* in 2007. (*Id.* at 509 (citing *Commonwealth v. Carter*, 932 A.2d 1261 (Pa. 2007)). Consequently, by the time Sanchez filed his appeal *nunc pro tunc*, "[t]here would have been no point in granting a new trial, because in the new trial Wagner would have been allowed to testify regarding the lab test results just as he had in the original trial. Therefore, even if the issue had been preserved, he could not have prevailed." (*Id.*). The Superior Court also noted that, at the time of Sanchez's current appeal, the law had changed again, reverting back to the *Carter* rule, but that the decisions were not retroactive and thus afforded Sanchez no relief. (*Id.* at 509-10 n.9).

(Doc. 28 at 27-28).

In sum, the Pennsylvania state courts' adjudication was not "contrary to" *Strickland* or its progeny and did not rely on unreasonable interpretations or determinations of fact or law. Given the "doubly deferential judicial review" that applies to ineffective assistance of counsel claims asserted pursuant to *Strickland* and evaluated under the § 2254(d)(1) standard, as we have here, the Court cannot conclude that the state courts' analyses were an unreasonable application of *Strickland* and its progeny, nor can the Court conclude that the state courts' decisions were premised upon unreasonable factual determinations. The PCRA court decision, Pennsylvania Superior Court decision, and Judge Carlson's R&R are comprehensive and well-supported by both the law and the factual record of the case. Therefore, Sanchez's claims to do not warrant habeas relief and the Court will overrule his objections to the R&R.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When

the district court denies a habeas petition on procedural grounds without reaching the

prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of

the denial of a constitutional right and that jurists of reason would find it debatable whether

the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000). Here, jurists of reason would not find the disposition of this case debatable.

Accordingly, a COA will not issue.

## VI. CONCLUSION

The Court will deny Sanchez's Petition for a Writ of Habeas Corpus (Doc. 1)

pursuant to 28 U.S.C. § 2254. A separate Order shall issue.


Robert D. Mariani
United States District Judge

21